**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0988-24

ARTURO ALOMAS,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted April 28, 2026 – Decided May 8, 2026

Before Judges Susswein and Chase.

On appeal from the New Jersey Department of Corrections.

Arturo Alomas, self-represented appellant.

Jennifer Davenport, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Dorothy M. Rodriguez, Deputy Attorney General, on the brief).

PER CURIAM

In this Department of Corrections ("DOC") disciplinary matter, inmate Arturo Alomas appeals from an August 7, 2024 final agency decision finding him guilty and imposing sanctions for committing prohibited act *.253,[1] engaging in or encouraging a group demonstration or work stoppage, in violation of N.J.A.C. 10A:4-4.1(a)(1)(xxi).  We reject Alomas's contentions that the DOC violated his procedural rights and acted arbitrarily and capriciously and affirm the findings.

We discern the following facts from the record.  On May 23, 2024, following a prison lockdown prompted by the stabbing of a correctional officer, Sergeant E. Perez ("Sgt. Perez")[2] addressed concerns about potential unrest among inmates who were cookhouse workers.  He offered the workers two options:  they could either be escorted out of the cookhouse without showering, or they could work through dinner and shower afterward.

The workers expressed their desire for Sgt. Perez's superiors to confirm these options before deciding.  Sgt. Perez informed them that once he escalated

_____

[1] Generally, DOC inmate disciplinary regulations classify "asterisk offenses" as "prohibited acts considered to be the most serious violations, resulting in the most severe sanctions."  Hetsberger v. Dep't of Corr., 395 N.J. Super. 548, 556 (App. Div. 2007); see also N.J.A.C. 10A:4-4.1(a).

[2] The first names of many of the DOC staff were omitted from the record before us.

A-0988-24

the matter, he would no longer control the arrangements. After relaying the workers' concerns to his superiors, Sgt. Perez returned and explained that per his superiors' instructions, the workers were now required to "tray up the rest of lunch and dinner" and would be permitted to shower after their shift.

Dissatisfied with this new directive, the workers collectively refused to stay, work, leave, or shower, engaging in a concerted group demonstration. In response, the facility activated a Special Operations Group ("SOG") team to address the developing situation. During this time, several workers moved water jugs to strategic locations in the mess hall, and Alomas, along with others, removed the lids and dumped water onto the floor, creating unsafe and slippery conditions for the response team. Video footage captured the incident.

Later that day, staff charged Alomas with committing prohibited act *.253. The next day, a DOC Sergeant served the charges on Alomas, further investigated, and referred the matter to a hearing officer.

The disciplinary hearing took place over numerous days starting on June 11, 2024. Alomas refused to attend but requested and received the assistance of

A-0988-24

a counsel substitute, who represented him in his absence.[3] Alomas pleaded not guilty and submitted two written statements. In his first statement, he described the sequence of events and the orders given by staff. In his second statement, he argued that staff had violated his right to confrontation by amending reports after serving the charges and accused them of altering the narrative to make him appear guilty of dumping water jugs as part of a group demonstration. The counsel substitute declined to call or confront witnesses. At the conclusion of the hearing, the counsel substitute reviewed and confirmed the accuracy of the adjudication report and the evidence considered.

After reviewing all the evidence, including staff reports, video footage, Alomas' written statements, and other relevant documents, Disciplinary Hearing Officer ("DHO") Cortes found Alomas guilty and imposed sanctions. Alomas appealed the decision, claiming ineffective assistance from his counsel substitute and requesting a rehearing to cross-examine staff and to undergo a polygraph examination. On August 7, 2024, Administrator Jeffrey Crothers upheld the hearing officer's decision and the sanctions imposed.

---

[3] A counsel substitute is an inmate adequately trained to assist another inmate in disciplinary and other correctional facility hearings pursuant to guidelines codified in N.J.A.C. 10A:6-2.13 and -2.14.

On appeal, Alomas presents the following arguments for our consideration:

Point I

THE DECISION OF THE DISCIPLINARY HEARING OFFICER WAS ARBITRARY AND CAPRICIOUS SINCE THE EVIDENCE DID NOT SUPPORT A GUILTY FINDING OF THE INFRACTION.

A.

Appellant's Due Process Rights under Wolff v. McDonnell, 418 U.S. 539 (1974) and Avant v. Clifford, 67 N.J. 496, 530 (1975) were violated during the Courtline proceedings.

Our role in reviewing a prison disciplinary decision is limited. Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). We do not perform a perfunctory review of the agency's findings but engage in a careful and principled examination. Williams v. Dep't of Corr., 330 N.J. Super. 197, 203-04 (App. Div. 2000).

On appeal, the judicial role in reviewing all administrative action is generally limited to three inquiries:

(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying

5

the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

"A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 238-39 (App. Div. 2019) (quoting In re Stallworth, 208 N.J. at 194).

We review agency decisions under an arbitrary and capricious standard. Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019); Melnyk v. Bd. of Educ. of Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).

Alomas contends the DOC's final determination was arbitrary, capricious, and unreasonable because there was "no evidence whatsoever that he

6

encouraged others to dump water on the floor." Furthermore, he asserts that "he followed all orders given by responding officers." We are not persuaded.

After considering all the evidence, DHO Cortes found Alomas guilty. In finding him guilty, DHO Cortes relied on all relevant evidence, including: (1) Sgt. Perez's special custody reports; (2) Officer K. Kelly's special custody reports; (3) Officer Rubino's special custody reports; (4) Alomas's face sheet; (5) the disciplinary housing placement form; (6) the preliminary incident report; (7) video footage; (8) Alomas's refusal to attend his disciplinary hearing; and (9) Alomas's written statements for the record. This evidence reflected that Alomas participated in a group demonstration by disobeying direct orders to continue working—an act that was further facilitated by Alomas (and others) purposely dumping water on the ground to create unsafe conditions for the response team, which was corroborated by both video footage and staff reports. Thus, the decision of the DHO was based on sufficient credible evidence and the decision of the DOC to uphold the finding of guilt was not arbitrary, capricious, or unreasonable.

We also reject Alomas' claim that his due process rights were violated. To the contrary, we are satisfied Alomas was afforded due process when he was notified of the charges against him and granted an opportunity to be heard at the

7

administrative hearing. As set forth by our Supreme Court, and later codified in the DOC regulations, N.J.A.C. 10A:4-9.1 to .28, inmates charged with disciplinary infractions are entitled to limited due process protections and are not afforded "the full panoply of rights" guaranteed to a defendant in a criminal prosecution. Avant v. Clifford, 67 N.J. 496, 522 (1975) (citing Morrissey v. Brewer, 408 U.S. 471, 480 (1972)). These regulations "strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due-process rights of the inmates." Williams v. Dep't of Corr., 330 N.J. Super. 197, 203 (App. Div. 2000) (citing McDonald v. Pinchak, 139 N.J. 188, 202 (1995)).

All of the procedural requirements required per N.J.A.C. 10A:4-9.1 to .28 and Avant were met here. Alomas received notice of the charges against him more than twenty-four hours before the hearing. The DOC afforded Alomas the assistance of a counsel substitute. See N.J.A.C. 10A:4-9.12(a) (providing an inmate charged with asterisk offense(s) "shall be afforded the right to request representation by counsel substitute"). As noted, Alomas voluntarily refused to be present at his hearing and chose to have his counsel substitute represent him in his absence, pursuant to N.J.A.C. 10A:4-9.11. The hearing was conducted before DHO Cortes who, as a member of the DOC's Central Office staff, was an

impartial tribunal.  At the hearing, Alomas failed to offer testimony or evidence and he neither challenged nor presented any contradictory evidence, leaving the DHO to consider the uncontroverted evidence.

To the extent we have not addressed any of Alomas's arguments, it is because we have determined they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0988-24